UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: EX PARTE APPLICATION OF YUZO TAKAI,<br><br>　　　　Applicant. | Case No. 21-mc-80245-TSH<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**<br><br>Re: Dkt. No. 1 |

## I.　INTRODUCTION

Applicant Yuzo Takai moves ex parte for an order pursuant to 28 U.S.C. § 1782 authorizing discovery from Google LLC for use in a contemplated civil proceeding and criminal investigation in Japan.  ECF No. 1.  For the reasons set forth below, the Court **GRANTS** the application.

## II.　BACKGROUND

Applicant is the sole proprietor of Ageo Kanade Dentistry Mouth & Peace Orthodontics (the "Clinic"), located in Japan.  Takai Decl. ¶ 2, ECF No. 2; Nagai Decl. ¶ 4, ECF No. 3.  Google is a Delaware limited liability company with its principal office at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Nagai Decl. ¶ 5 & Ex. 1.[1]

The Clinic maintains a Google My Business account, by which it can edit its business profile that appears on various services operated by Google, including the Google search engine and Google Maps.  Takai Decl. ¶ 9.  When prospective patients search for the Clinic on the

---

[1] Statement of Information of Google filed and dated March 24, 2021, obtained from the California Secretary of State website at: https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=201727810678-30191227.

Google search engine, the Google Maps business profile and reviews and ratings of the Clinic are displayed as search results. *Id.* ¶¶ 10-11. Since January 15, 2020 and continuing to at least September 27, 2021, anonymous individuals, using unknown Google accounts, have repeatedly changed the Clinic's name on its Google My Business account from "Ageo Kanade Dentistry Mouth & Peace Orthodontics" to "Ageo Kanade Dentistry." *Id.* ¶¶ 13, 15. As of August 31, 2021, the anonymous individuals have caused the name changes at least 115 times. *Id.* ¶ 13, Exs. 2-3; Katsurada ¶ 5, Ex. B-1, ECF No. 4.[2] Applicant believes the individuals are causing the name changes by using the "Suggest an edit" function of Google Maps, for which a Google account is necessary.[3] Takai Decl. ¶ 14. Google Accounts are controlled by Google.[4]

Because of the name changes, when a prospective patient searches for the Clinic on the Google search engine, they are misled into believing it is a general practice dental clinic that does not provide or specialize in orthodontic care. *Id.* ¶¶ 16-18. As such, the Clinic has lost business of prospective patients, has had to alter its business routine to correct the name changes every time they occur, and the name changes have been determined by Google's automated system to be suspicious activity or spam, which has resulted in the Clinic's Google My Business account being suspended on four separate occasions. *Id.* ¶¶ 19-22, Exs. 4 (e-mail notifications of the suspensions) & 5 (e-mail received by the Clinic from the e-mail address of Google's support team responsible for Google My Business accounts on June 3, 2021, in which Google mentions that the name changes may be considered spam by Google in the context of explaining possible causes of the suspensions of the Clinic's account); Katsurada Decl. ¶¶ 6-7, Exs. C-1, D-1 (respective English translations of Exhibits 4 and 5 attached to the declaration of Yuzo Takai).

During the suspension of the Clinic's My Google Business account, its profile, ratings, and

---

[2] English translation of the first page of Exhibit 2 attached to the declaration of Yuzo Takai. According to Applicant, all pages of Exhibit 2 are essentially the same except for their dates, and as such, Exhibit B-1 serves as a representative sample of the 115 e-mails.
[3] Google LLC, Edit business information in Google Maps, Google Maps Help, https://support.google.com/maps/answer/7084895
[4] Google LLC, Services that use Google's Terms of Service & their service-specific additional terms and policies, Google Privacy & Terms, https://policies.google.com/terms/service-specific?hl=en-US (Terms of Service apply to Google Accounts, and services that are subject to Terms of Service are services of Google LLC).

2

1  reviews cease to appear on Google search results or on Google Maps, which results in almost no
2  new patients contacting the Clinic through the internet. Takai Decl. ¶¶ 22-24, Ex. 4; Katsurada
3  Decl. ¶ 6, Ex. C-1 (English translation of Exhibit 4 attached to the declaration of Yuzo Takai).
4  The name changes and the resulting suspension have caused significant financial damage to the
5  Clinic. Takai Decl. ¶¶ 19, 20, 25-26. Despite these consequences, Google has refused to prevent
6  the anonymous individuals from causing the name changes and has refused to disclose their true
7  identities without a court order or subpoena. *Id.* ¶¶ 28-29, Exs. 6-7 (emails from Google's support
8  team); Katsurada Decl. ¶¶ 8-9, Exs. E-1, F-1 (respective English translations of Exhibits 6 and 7
9  attached to the declaration of Yuzo Takai).

10        The name changes continue on a daily basis as of September 27, 2021, and the frequency
11  at which the changes are occurring has been intensifying, which has stressed the operations of the
12  Clinic, and which is causing significant financial loss. Takai Decl. ¶¶ 26-27, 30. Further, unless
13  the Clinic is able to stop the anonymous individuals, there is a possibility that Google will
14  terminate the Clinic's Google My Business account. *Id.* ¶ 30, Ex. 4 at 1-4 (Google warning that
15  account may be terminated); Katsurada Decl. ¶ 6, Ex. C-1 at 1-4 ("If your violations continue,
16  your Google Account may be terminated").

17        The Clinic suspects that the name changes are being caused by a competitor to mislead
18  prospective patients that it does not provide orthodontic care, and to lure prospective patients to
19  the competitor's business. Takai Decl. ¶¶ 17-18, 31. According to Applicant, the individuals' acts
20  are unlawful and actionable under Japanese law, they were done to interfere with the Clinics'
21  business, and they have injured and continue to cause loss of business and financial damage. *Id.*
22  ¶¶ 19, 25-27, 30-33; Nagai Decl. ¶¶ 6-13, 19-26. Applicant contends that the anonymous
23  individuals have committed a tort pursuant to Article 709 of the Civil Code of Japan by damaging
24  the Clinic, and the Clinic intends to file civil lawsuits against them. Takai Decl. ¶¶ 32-35; Nagai
25  Decl. ¶¶ 6-13. Applicant also contends the Clinic has sufficient evidence to make out a prima
26  facie case for a tort pursuant to Article 709, and the civil lawsuits will withstand a motion to
27  dismiss in Japan. Nagai Decl. ¶ 13. However, to file the civil lawsuits, the true identities of the
28  individuals are necessary. *Id.* ¶ 18.

United States District Court
Northern District of California

Additionally, Applicant contends the anonymous individuals have committed the crime of fraudulent obstruction of business pursuant to Article 233 of the Penal Code of Japan, and the Clinic intends to file criminal complaints with the Japanese police (the "Investigative Authorities"), which will initiate formal criminal investigations against the individuals to determine whether to prosecute.  Takai Decl. ¶¶ 32-35; Nagai Decl. ¶¶ 19-26.  For the Investigative Authorities to accept the criminal complaints, information that may lead to the true identities of the individuals, such as the access log of the subject Google accounts, is necessary.  Nagai Decl. ¶ 27.

On October 18, 2021, Applicant filed the present ex parte application seeking leave to conduct limited discovery by serving a subpoena upon Google to identify the individuals' identities.

### III.   LEGAL STANDARD

Section 1782 provides: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .  The order may be made . . . upon the application of any interested person[.]"  28 U.S.C. § 1782(a).  A district court is authorized to grant a § 1782 application where "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'"  *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citations omitted).

The court has wide discretion to grant discovery under § 1782.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260-61 (2004).  In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or

4

the United States," and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65. The court's discretion is to be exercised in view of the twin aims of § 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252. There is no requirement that the party seeking discovery establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *Id.* at 247, 261-63. "Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here." *Id.* at 263.

Applications made under § 1782 are typically considered on an ex parte basis because "parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *IPCom GmbH & Co, KG v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014). Consequently, orders granting § 1782 applications typically only provide that discovery is "authorized," and thus the opposing party may still raise objections and exercise its due process rights by challenging the discovery after it is issued via a motion to quash, which mitigates concerns regarding any unfairness of granting the application ex parte. *In re Ex Parte Appl. Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *2 (N.D. Cal. Mar. 24, 2016).

## IV. DISCUSSION

### A. Statutory Requirements

Applicant's request satisfies the statutory requirements of § 1782. First, Google can be found in this district because its principal office is in Mountain View, California. *See In re Med. Corp. Seishinkai*, 2021 WL 3514072, at *2 (N.D. Cal. Aug. 10, 2021) ("[T]he subpoena seeks discovery from Google, which is located in this District."); *In re Super Vitaminas, S.A.*, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (having an office in this district is sufficient under § 1782).

Second, to apply for discovery pursuant to § 1782, a formal proceeding in the foreign jurisdiction need not be currently pending, or even imminent. *Intel*, 542 U.S. at 258-59. Instead,

1  all that is necessary is that a "dispositive ruling" by the foreign adjudicative body is "within

2  reasonable contemplation." *Id.* at 259 (holding that discovery was proper under § 1782 even

3  though the applicant's complaint was still only in the investigative stage). Applicant has shown a

4  "reasonable contemplation" of litigation because the discovery sought is for purposes of a civil

5  lawsuit to be filed in Japan, and for a criminal complaint to be filed in Japan that will initiate a

6  criminal investigation. *See In re Med. Corp. Seishinkai*, 2021 WL 3514072, at *2 ("Applicant

7  requests this discovery for use in a civil action that it intends to file in Japan once it learns the

8  identity of the Google account users responsible for the relevant postings. . . . This proceeding

9  before a foreign tribunal appears to be within reasonable contemplation."); *In re Ex Parte Appl. Of*

10  *Haruki Hattori*, 2021 WL 4804375, at *3 (N.D. Cal. Oct. 14, 2021) (same).

11  Third, Applicant—as the prospective litigant—has a "reasonable interest" in obtaining

12  judicial assistance and, therefore, may apply for assistance pursuant to § 1782. *See Intel*, 542 U.S.

13  at 256 (litigants are the most common example of interested person); *In re Yasuda*, 2019 WL

14  4933581, at *3 (N.D. Cal. Oct. 7, 2019) (prospective litigant in Japanese civil case had reasonable

15  interest under § 1782); *In re Med. Corp. Seishinkai*, 2021 WL 3514072, at *2 ("Applicant, as the

16  putative plaintiff in the contemplated civil action, is an interested person within the meaning of the

17  statute.").

18  **B.      Discretionary *Intel* Factors**

19  Although Applicant satisfies the statutory requirements, the Court must also determine

20  whether judicial assistance is appropriate by considering the *Intel* factors.

21  **1.      Participation of Target in the Foreign Proceeding**

22  The first factor considers whether the person from whom discovery is sought is a party to

23  the foreign proceeding. *Intel*, 542 U.S. at 247. However, "the key issue is whether the material is

24  obtainable through the foreign proceeding." *In re Med. Corp. Seishinkai*, 2021 WL 3514072, at

25  *2 (simplified). According to Applicant, Google will not be a party to the civil action brought the

26  Clinic. Nagai Decl. ¶ 31. The documents Applicant seeks by subpoena are located in the United

27  States, and he contends that the evidence is thus outside the reach of a Japanese court's

28  jurisdiction. *Id.* Under these circumstances, the Court finds there is a need for assistance pursuant

1  to § 1782, so this factor weighs in favor of permitting discovery. *In re Med. Corp. Seishinkai*,

2  2021 WL 3514072, at *2 (finding first factor satisfied where Google would not be party to

3  contemplated proceedings and documents sought were in the United States); *In re Ex Parte Appl.*

4  *of Haruki Hattori*, 2021 WL 4804375, at *3 (same).

### 2. Receptivity of Foreign Court to U.S. Judicial Assistance

The second *Intel* factor weighs in favor of discovery unless the foreign tribunal in question has expressly made it clear that it would not accept the evidence. *In re Appl. of Jt. Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016) (Under this factor, "courts look for authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782."). In the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782, courts tend to err on the side of permitting discovery. *See Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) (citation omitted); *In re Med. Corp. H&S*, 2019 WL 1230440, at *3 (N.D. Cal. Mar. 15, 2019) ("In the absence of evidence that Japanese courts would object to MCHS's discovery of the information sought in the subpoena, or that they object more generally to the judicial assistance of U.S. federal courts, the Court concludes that this factor weighs in favor of authorizing service of the subpoena.").

Here, the declarations submitted in support of the application confirm there are no known restrictions imposed by or any policies under Japanese law limiting U.S. federal court judicial assistance, and that Japanese courts and the Investigative Authorities are receptive to assistance in discovery by U.S. federal courts, including discovery of personal identifying information of individuals posting anonymous online reviews. Nagai Decl. ¶¶ 32-33. Further, courts in this district have in the past granted § 1782 discovery for use in Japanese proceedings. *See, e.g., In re Med. Corp. H&S*, 2019 WL 1230440; *In re Med. Corp. Seishinkai*, 2021 WL 3514072; *In re Yasuda*, 2019 WL 4933581; *In re Ex Parte Appl. Of Haruki Hattori*, 2021 WL 4804375. Because there is evidence showing that Japanese courts and the Investigative Authorities are receptive to U.S. federal court judicial assistance, and because there is nothing to show that Japanese courts or Investigative Authorities would object to discovery of the information sought by Applicant, this factor weighs in favor of authorizing discovery.

7

### 3. Circumvention of Foreign Proof-Gathering Restrictions

The third *Intel* factor weighs in favor of discovery unless the applicant is attempting to circumvent the foreign country's proof-gathering restrictions. *Intel*, 542 U.S. at 244-45. The question under this prong is whether the foreign court would be affronted by the applicant's resort to U.S. discovery. *In re Appl. of Gianoli Aldunate*, 3 F.3d 54, 61-62 (2d Cir. 1993). "A perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (citing *In re Appl. of Caratube Int'l Oil Co.*, 730 F. Supp. 2d 101, 107-08 (D.D.C. 2010)). Courts have found that this factor weighs in favor of discovery where there is "nothing to suggest that [the applicant] is attempting to circumvent foreign proof-gathering restrictions." *In re Google, Inc.*, 2014 WL 7146994, at *3 (N.D. Cal. Dec. 15, 2014); *In re Eurasian Natural Resources Corp. Ltd.*, 2018 WL 1557167, at *3 (N.D. Cal. Mar. 30, 2018).

Here, Applicant provided the declaration of Mr. Nagai, an attorney for Applicant who is registered to practice in Japan. Nagai Decl. ¶ 1. Mr. Nagai states he is aware of no restrictions or policies under Japanese law that would limit the gathering of the evidence Applicant seeks here. *Id.* ¶ 34. In the absence of contrary information regarding the procedures acceptable to a Japanese court for identifying the Google account-users, the Court concludes that this factor also weighs in favor of discovery. *See In re Med. Corp. Seishinkai*, 2021 WL 3514072, at *3 (factor weighs in favor of discovery in the absence of evidence that Japanese law would limit the gathering of evidence sought under § 1782); *In re Ex Parte Appl. of Haruki Hattori*, 2021 WL 4804375, at *4 (same).

### 4. Unduly Burdensome of Intrusive Discovery

Finally, the Court considers whether "the discovery requested is unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information and appear to be a broad "fishing expedition" for irrelevant information. *In re Ex Parte Appl. of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016). Request Nos. 1-4 in Applicant's proposed subpoena to Google seek

the following categories of documents:

**REQUEST FOR PRODUCTION NO. 1.** ALL DOCUMENTS showing the following information ever registered with ACCOUNT 1:

(i)  Google Account ID;
(ii) given name, family name, or ALL names;
(iii) physical, billing, shipping, or ALL other addresses;
(iv) recovery, authentication, or ALL other e-mail addresses;
(v) recovery, authentication, or ALL other telephone numbers;
(vi) ALL names and addresses of ALL credit cards registered to ACCOUNT 1 (but not the credit card number, expiration date, or card validation code); and,
(vii) ALL names, addresses, e-mail addresses, telephone numbers, and names of the payment methods (such as PayPal), for ALL non-credit card payment methods registered to ACCOUNT 1.

**REQUEST FOR PRODUCTION NO. 2.** ALL DOCUMENTS showing the following information (i) as of the date that ACCOUNT 1 was created, (ii) as of the date that ACCOUNT 1 caused ALL NAME CHANGES, and (iii) for the three-month period immediately preceding October 18, 2021 and until the date that you respond to this request: ALL access log and login history (dates, times, IP addresses, and type of accesses) of ACCOUNT 1.

**REQUEST FOR PRODUCTION NO. 3.** ALL DOCUMENTS showing the following information ever registered with ALL Google Ads accounts or ALL other accounts that are controlled by you that ACCOUNT 1 has ever been used to login with (the "OTHER ACCOUNTS 1"):

(i) given name, family name, or ALL names;
(ii) physical, billing, shipping, or ALL other addresses;
(iii) recovery, authentication, or ALL other e-mail addresses;
(iv) recovery, authentication, or ALL other telephone numbers;
(v) ALL names and addresses of ALL credit cards registered to ALL of the OTHER ACCOUNTS 1 (but not the credit card number, expiration date, or card validation code);
(vi) ALL names, addresses, e-mail addresses, telephone numbers, and names of the payment methods (such as PayPal), for ALL non-credit card payment methods registered to ALL of the OTHER ACCOUNTS 1; and,
(vii) the type of ALL of the OTHER ACCOUNTS 1 (such as a Google Ads account).

**REQUEST FOR PRODUCTION NO. 4.** ALL DOCUMENTS showing the following information as of the date that ALL of the OTHER ACCOUNTS 1 were created, and for the three-month period immediately preceding October 18, 2021 and until the date that you respond to this request: ALL access log and login history (dates, times, IP addresses, and type of accesses) of ALL of the OTHER ACCOUNTS 1.

Mot., Ex. B.  The Court finds this discovery is narrowly tailored to seek only sufficient

9

information to identify the individuals. It is not unduly intrusive or burdensome, as Applicant seeks discovery of only personal identifying information such as names, addresses, telephone numbers, and e-mail addresses, or information that will lead to the discovery of personal identifying information, such as names and addresses on credit cards and access logs for very limited periods of time, which information is stored by Google in the ordinary course of its business. *See In re Frontier Co., Ltd.*, 2019 WL 3345348, at *5 (N.D. Cal. July 25, 2019) (granting § 1782 request to issue a subpoena for the name, address, email address, telephone number and name and address on credit cards); *In re Med. Corp. Seishinkai*, 2021 WL 3514072, at *4-5 (authorizing similar discovery from Google); *In re Ex Parte Appl. of Haruki Hattori*, 2021 WL 4804375, at *5 (same).

Additionally, the subpoena does not seek the content of any communications associated with the subject Google account, in compliance with the Stored Communications Act, 18 U.S.C. § 2701 et seq. *See, e.g., Optiver Australia Pty. Ltd. v. Tibra Trading Pty. Ltd.*, 2013 WL 256771, at *2-3 (N.D. Cal. Jan. 23, 2013) (discussing prohibitions of the Stored Communications Act).

Accordingly, subject to the requirements discussed below, the Court will permit Applicant to serve the proposed subpoena on Google.

## V.   CONCLUSION

The application meets the statutory criteria for an order authorizing service of the proposed subpoena. In addition, the factors that inform the Court's exercise of its discretion under *Intel* favor authorizing service of the proposed subpoena. Accordingly, the Court authorizes service of the proposed subpoena on Google. This order does not foreclose a motion to quash or modify the subpoena by Google following service or by the Google account user whose identifying information is sought, and the Court orders Applicant to comply with the following requirements to ensure all interested persons have an opportunity to contest the subpoena if they wish:

1.   At the time of service of the subpoena, Applicant must also serve a copy of this order on Google.

2.   Within 10 calendar days of service of the subpoena and this order, Google shall notify the account user that their identifying information is sought by Applicant and

10

shall serve a copy of this order on each such account user.

3. Google and/or the account user whose identifying information is sought may, within 21 days from the date of the notice, file a motion in this Court contesting the subpoena (including a motion to quash or modify the subpoena).

4. If any party contests the subpoena, Google shall preserve, but not disclose, the information sought by the subpoena pending resolution of that contest.

5. Any information Applicant obtains pursuant to the subpoena may be used only for purposes of the anticipated actions in Japan, and Applicant may not release such information or use it for any other purpose, absent a Court order authorizing such release or use.

**IT IS SO ORDERED.**

Dated: November 9, 2021

_____
THOMAS S. HIXSON
United States Magistrate Judge

11